**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William J. Howard, | No. CV-03-2487-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| General Electric Capital Business Asset Funding Corporation, | |
| Defendant. | |

Pending before the Court are Plaintiff's motion for partial summary judgment and Defendant's cross-motion for summary judgment on Plaintiff's breach of contract claim. Docs. ##127, 136. Also pending is Defendant's motion for summary judgment on Plaintiff's breach of the duty of good faith and fair dealing claim. Doc. #129. For the reasons set forth below, the Court will deny the motions.[1]

## Background

Plaintiff attempted to purchase thirteen Denny's restaurants from Phoenix Restaurant Group ("PRG"). On May 4, 2001, Defendant sent Plaintiff a loan proposal offering to lend

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1  Plaintiff $9.5 million for the purchase of the restaurants. Plaintiff accepted the proposal
2  three days later. On July 2, 2001, Defendant sent Plaintiff a commitment letter that
3  incorporated the terms of the loan proposal. Plaintiff accepted the commitment letter the
4  next day. On October 5, 2001, Defendant sent Plaintiff a termination letter stating that
5  Defendant was terminating its loan commitment "because of a material adverse change in the
6  circumstances of the transaction."[2]

7  Plaintiff commenced this action by filing a complaint against Defendant in state court.
8  Plaintiff alleged that Defendant wrongfully terminated the commitment letter based on a false
9  rumor that PRG might file for bankruptcy. After Plaintiff filed an amended complaint,
10 Defendant removed the action to this Court. Doc. #1.

11 Plaintiff filed a second amended complaint that purported to state four claims for
12 relief: breach of contract, breach of the duty of good faith and fair dealing, tortious
13 interference with business expectancy, and indemnification. Doc. #19. On April 12, 2004,
14 the Court granted Defendant's motion to dismiss the tortious interference with business
15 expectancy and indemnification claims. Doc. #30. Plaintiff filed a third amended complaint
16 on April 27, 2004, re-alleging the breach of contract and breach of the duty of good faith and
17 fair dealing claims. Doc. #37. Defendant filed an answer the same day. Doc. #38.

**Discussion**

**I.    Summary Judgment Standard.**

20 Summary judgment is appropriate if the evidence, viewed in the light most favorable
21 to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and
22 that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*
23 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Substantive law determines which
24 facts are material and "[o]nly disputes over facts that might affect the outcome of the suit . . .
25 will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*,

---

[2] Plaintiff initially sought a loan from Defendant on behalf of a corporation Plaintiff controlled, Salient, Inc. Plaintiff later substituted Olio, Inc., for Salient. By the time this lawsuit was filed, Olio had assigned its assets to Plaintiff.

477 U.S. 242, 248 (1986). To preclude summary judgment the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**II.    Analysis.**

    **A.    Does Arizona or Washington Law Apply to Plaintiff's Contract Claims?**

Defendant states that because Arizona's application of the implied duty of good faith and fair dealing differs from Washington law, a true conflict of law exists with respect to Plaintiff's contract claims. Doc. #129 at 6 n.3. The Court agrees. *Compare Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 29 ¶ 64 (Ariz. 2002) ("The duty of good faith extends beyond the written words of the contract. . . . [A] party may . . . breach its duty of good faith without actually breaching an express covenant in the contract.") *with Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) ("The duty to cooperate exists only in relation to performance of a specific contract term. . . . [T]here cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."). Because this is a diversity case, the Court must apply the choice-of-law rules of Arizona, the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

Arizona has adopted Section 188 of the Restatement (Second) of Conflicts of Laws ("Restatement") as the basis for deciding choice of law issues involving contracts. *See Landi v. Arkules*, 835 P.2d 458, 463 (Ariz. Ct. App. 1992). Section 188 provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which . . . has the most significant relationship to the transaction and the parties under the principles stated in § 6." Restatement § 188(a)(1).[3] "[T]he contacts to be taken

---

[3] The § 6 principles include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Restatement § 6(2)(a)-(g).

- 3 -

1 into account in applying the principles of § 6 . . . include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, . . . place of incorporation and place of business of the parties." Restatement § 188(a)(2).

### 1. The Place of Contracting.

The place of contracting is the place where the last act necessary to make the contract binding occurred under the law of the forum state. Restatement § 188, cmt. e. Arizona has adopted the "mailbox rule" for contract acceptance. *See Cohen v. First Nat'l Bank of Nogales*, 198 P. 122, 124 (Ariz. 1921). Under that rule, an offer is accepted and a contract is binding when the acceptance is sent. *See id*; *Spellman Lumber Co. v. Hall Lumber Co.*, 241 P.2d 196, 198 (Ariz. 1952) ("[T]he contract as to the second car of lumber was formed . . . when the defendants formally accepted the offer of the plaintiffs by mailing them a written confirmation."); *Molybdenum Corp. of Am. v. Superior Ct.*, 498 P.2d 166, 168 (Ariz. Ct. App. 1972) ("[T]he defendant's employment offer was accepted by the plaintiff . . . by his act of depositing the written acceptance in the mail in Arizona."). In this case, it is undisputed that Plaintiff signed both the loan proposal and commitment letter in Arizona and sent them to Defendant from Arizona. Docs. ##129 at 8, 140 at 12. This factor favors the application of Arizona law.

### 2. The Place of Negotiation.

The place where the parties negotiate the contract has little significance if "there is no one single place of negotiation and agreement[.]." Restatement § 188, cmt. e. The loan proposal was negotiated in Arizona and Michigan. Doc. #162 ¶ 24. The commitment letter was negotiated primarily in Washington. Docs. ##130 ¶ 8, 162 ¶ 25. This factor does not weigh in favor of either Arizona or Washington law.

### 3. The Place of Performance.

Neither the loan proposal nor the commitment letter requires a specific place of performance. Doc. #128 Exs. A, K. Defendant contends that the only performance contemplated by the parties after Defendant funded the loan was Plaintiff's repayment of the

- 4 -

loan to Defendant in Washington. Doc. #129 at 9-10 (citing *Taylor v. Sec. Nat'l Bank*, 514 P.2d 257 (Ariz. Ct. App. 1973) (holding that California law applied because the defendant was contractually obligated to repay a loan in California)). Because Defendant did not fund the loan, however, Plaintiff had no obligation to repay it. *See Taylor*, 514 P.2d at 261 (*After receipt of the plane by the defendant Taylor*, the only continuing aspect of this entire transaction was the required performance by him of his obligation to make monthly payments to the assignee in California.") (emphasis added). The initial performance contemplated by the parties was Defendant's funding of the loan to an Arizona corporation. *See* Docs. ##37 ¶ 1, 128 Exs. A, K. This factor favors Arizona law.

### 4. The Location of the Subject Matter of the Contract.

The direct subject matter of the contract was the funding of a loan to an Arizona corporation and the repayment of the loan to a Washington corporation. *See* Doc. #128 Exs. A, K. The indirect subject matter was the purchase of restaurants located in Florida and Missouri. This factor does not weigh in favor of either Arizona or Washington law.

### 5. The Location of the Parties.

At the time of contract formation and termination, Defendant was incorporated in Delaware and located in Washington, Salient and Olio were incorporated and located in Arizona, and Plaintiff and his wife, who personally guaranteed the loan, were residents of Arizona. Docs. ##129 at 10, 140 at 14. This factors weighs in favor of Arizona law.

### 6. The Relevant § 6 Principles.

Arizona takes a more expansive view of the duty of good faith and fair dealing than does Washington. *Compare Wells Fargo*, 38 P.3d at 29 *with Badgett*, 807 P.2d at 360. Arizona places greater importance on the primary benefit of the agreement and the parties' justified expectations. *See Wells Fargo Bank*, 38 P.3d at 31 ¶ 69. Based on the commitment letter, Plaintiff justifiably expected that Defendant would fund the loan, which in turn would enable Plaintiff to purchase the restaurants from PRG. The Court concludes that Arizona's policies of protecting the primary benefit of the agreement and the parties' justified expectations should be the controlling state interest. *See* Restatement § 6(1)(b)-(e).

**7.    Conclusion.**

Factors 1, 3, and 5 of § 188 weigh in favor of applying Arizona law, while factors 2 and 4 are neutral.  The relevant § 6 principles also weigh in favor of Arizona's policies of protecting the primary benefit of the agreement and the parties' justified expectations.  The Court thus concludes that Arizona law should apply to the contract claims.  *See* Restatement §§ 188, 6; *Landi*, 835 P.2d at 463 (affirming the trial court's decision to apply Arizona law under Restatement §§ 188 and 6 because "Arizona [was] the state with the most significant contacts"); *Aries v. Palmer Johnson, Inc.*, 735 P.2d 1373, 1381 (Ariz. Ct. App. 1987) (holding that Arizona law applied because the contract was entered into in Arizona and one party was domiciled in Arizona).[4]

**B.    Plaintiff's Breach of Contract Claim.**

**1.    Revocation.**

The commitment letter, as amended, set a September 26, 2001 funding cut-off date.  Doc. #130 Ex. 5.  Around that time, the parties discussed extending the cut-off date.  On October 3, 2001, Defendant sent Plaintiff an amendment to the commitment letter that addressed the issue of extending the cut-off date to October 31, 2001.  *Id.* Ex. 6.

Defendant contends in its cross-motion for summary judgment that the October 3 amendment was an offer to extend the funding cut-off date and that Defendant revoked its offer two days later when it sent Plaintiff the termination letter.  Doc. #136 at 11-13.  Plaintiff argues that there is a genuine dispute as to whether the parties had an enforceable oral agreement to extend the cut-off date prior to termination.  The Court agrees.[5]

---

[4] *See also* Doc. #43 (4/7/04 Hr'g Tr. 37-38 (concluding that Arizona had the most significant relationship to Plaintiff's tort claims under Restatement §§ 145 and 6)).

[5] Defendant requests that the Court not consider Plaintiff's new "claim" of an oral agreement because Plaintiff never pled or disclosed evidence of the "claim." Doc. #159 at 2-3.  The Court will deny the request.  Plaintiff raised the issue of an oral agreement in response to Defendant's revocation argument. The issue of an oral agreement is simply part of Plaintiff's properly pled breach of contract claim. *See* Fed. R. Civ. P. 8(a).  Moreover, the documents Plaintiff relies on in support of an oral agreement were created by Defendant, negating any unfair surprise or prejudice.

- 6 -

Construed in Plaintiff's favor, the evidence shows the following: During telephone conversations with Plaintiff in late September 2001, Defendant's Regional Credit Manager, Peter Marinace, agreed to extend the funding cut-off date to October 31, 2001. Doc. #156 ¶ 9, Ex. G. On September 27, 2001, Marinace sent an e-mail to Defendant's Contract Administrator, Tami Schlicter, instructing her to "issue [the] funding extension letter through 10-31-01." *Id.* ¶ 10, Ex. H. On October 3, 2001, Marinace sent a follow-up e-mail instructing Schlicter to fax the extension letter to Plaintiff and explaining that "per [his] earlier e-mail, [Plaintiff] *has now through 10-31-01*." *Id.* ¶ 11, Ex. I (emphasis added). Two days later, Defendant sent Plaintiff a letter terminating the commitment letter. Doc. #128 Ex. O.

A jury reasonably could conclude from this evidence that the parties had an enforceable oral agreement extending the funding cut-off date to October 31, 2001. Plaintiff has testified that Marinace agreed to the extension in late September 2001, and Marinace's e-mails appear to confirm the agreement. Doc. #156 Exs. G-I.[6] Defendant's October 5 letter stated that Defendant was "terminating" the loan commitment, not revoking an offer to extend the funding cut-off date. Doc. #128 Ex. O. Whether the parties intended to extend the cut-off date to October 31, 2001 is a factual question for the jury. *See Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985) (stating that "[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment"). The Court will deny Defendant's cross-motion for summary judgment.[7]

---

[6] Marinace does not recall his conversations with Plaintiff or how the October 31, 2001 cut-off date was selected. *Id.* Ex. D.

[7] Defendant argues in its cross-motion that Plaintiff's damages should be limited to his reliance damages. Doc. #136 at 14-16. Defendant, however, did not seek or obtain leave to raise this issue. *See id.* at 3 n.1. The Court granted Defendant leave to file a belated second motion for summary judgment on the revocation issue because that issue may have been dispositive of the case. *See* Docs. ##139, 148. The Court will not consider Defendant's damages argument.

### 2. Breach.

Plaintiff contends in its motion for partial summary judgment that Defendant wrongfully terminated the commitment letter based on a false rumor that PRG might file for bankruptcy. Doc. #1 at 1. Specifically, Plaintiff contends that Defendant's reason for terminating was not contemplated by either the material adverse change ("MAC") clause in the loan proposal or the MAC clause in the commitment letter. *Id.* (citing *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390 (Ariz. Ct. App. 1983)).

Defendant states that a PRG bankruptcy could have subjected the transaction between PRG and Plaintiff to a fraudulent conveyance challenge and would have permitted PRG to reject its primary leases on the restaurants being subleased to Plaintiff, in which case Plaintiff could have lost possession of the leased premises. Doc. #136 at 10. Defendant argues that the MAC clauses are exceptionally broad and that a jury reasonably could conclude from the evidence that Defendant was entitled to terminate the commitment letter based on the threat of a PRG bankruptcy.

### a. The Loan Proposal MAC Clause.

The MAC clause contained in the loan proposal provides:

> In the event there shall be a material adverse change in [Plaintiff's] financial condition prior to funding, [Defendant] shall have the right and option to terminate its obligation hereunder without thereby incurring any liability to [Plaintiff].

Doc. #128 Ex. K. Defendant contends that the only reasonable interpretation of the phrase "financial condition" is one that includes the "future prospects" of Plaintiff's company. Doc. #136 at 31-32. Defendant, however, ignores the language "prior to funding." Neither a fraudulent conveyance challenge nor Plaintiff's loss of possession of the restaurants could have occurred "prior to funding." Those issues could have arisen only after the loan funded and the deal closed. The Court concludes that the plain language of the loan proposal MAC clause did not entitle Defendant to terminate its loan commitment based on the threat of a PRG bankruptcy. *See United Cal. Bank*, 681 P.2d at 410 ("If the meaning of a contract can be determined from the four corners of the document and cannot reasonably be construed in

- 8 -

more than one sense, . . . the court must give effect to the language of the agreement."); *see also S.C. Johnson & Son, Inc.*, 167 F. Supp. 2d 657, 670 (D. Del. 2001) (interpreting the phrase "financial condition" in a MAC clause as referring only to the seller's pre-closing financial condition and holding that a pending lawsuit against the seller did not materially change the seller's financial condition); *Goodman Mfg. Co. v. Raytheon Co.*, No. 98 Civ. 2774 (LAP), 1999 WL 681382, at *14 (S.D.N.Y. Aug. 31, 1999) ("As for plaintiff's theory that 'future prospects' must be included in the definition of 'financial condition,' . . . the parties failed to include such a meaning in the Agreement, and I decline the invitation to insert it by judicial construction.").

### b. The Commitment Letter MAC Clause.

The MAC clause contained in the commitment letter provides:

> Should the structure of the transaction between [Plaintiff] and [PRG] materially change in a manner that [Defendant] deems unacceptable, [Defendant] reserves the right to withdraw this commitment.

Doc. #128 Ex. A. Plaintiff contends that he is entitled to partial summary judgment because there is no language in this MAC clause suggesting that the parties intended the clause to apply to a *future* change in the structure of the transaction, i.e. a post-closing PRG bankruptcy. Doc. #127 at 15. Defendant argues that a jury reasonably could conclude that the MAC clause encompassed the parties' expectation that Plaintiff would be able to operate the restaurants without any serious threat to his ownership or continued possession of the restaurants, and that a potential PRG bankruptcy posed such a threat. Doc. #136 at 22.

The Court agrees with Defendant. The parties left the phrase "structure of the transaction" undefined in the commitment letter. *See* Doc. #128 Ex. A. The MAC clause does not limit the relevant material changes to *existing* changes. Marinace has testified that his intent in including the MAC clause in the commitment letter was to provide Defendant with "the broadest possible protection from any changes in the structure of the transaction" and to permit Defendant "to terminate its loan commitment if there were any changes in the circumstances of [Plaintiff's] acquisition that would materially affect [Plaintiff's] ability to

repay [the] loan." Doc. #137 Ex. 28 ¶ 12 (Marinace Aff.).[8]  Defendant's expert witness has testified that the purpose of a MAC clause in the lending industry is to protect the lender from new risks or a substantial increase in existing risks that did not exist at the time the loan commitment was made. *Id.* Ex. 23 at 11.

Construing the evidence in Defendant's favor, the Court finds a genuine factual issue concerning the intended meaning of the commitment letter MAC clause. That issue must be resolved by a jury, not the Court. *See United Cal. Bank*, 681 P.2d at 412 (stating that "any ambiguity in [contract] documents is subject to a factual determination concerning the intent of the parties and is to be resolved conclusively by the trier of fact"); *In re Estate of Pouser*, 975 P.2d 704, 709 (Ariz. Ct. App. ) ("If the will is reasonably susceptible to two interpretations, that goal is better served by determining the testator's intent as a question of fact.") (citing *United Cal. Bank*, 681 P.2d at 412); *see also Braxton-Secret*, 769 F.2d at 531 (questions involving a person's state of mind are generally factual issues).[9]  The Court will deny Plaintiff's motion for partial summary judgment on his breach of contract claim.[10]

### C. Plaintiff's Breach of the Duty of Good Faith and Fair Dealing Claim.

Defendant moves for summary judgment on the ground that Plaintiff has presented no facts showing that Defendant breached a duty of good faith and fair dealing under

---

[8] Plaintiff contends that Marinace's affidavit must be stricken because it contradicts his deposition testimony and is offered merely to create a triable issue. Doc. #156 at 12. The Court disagrees. Marinace testified at his deposition that he could not recall why he included the MAC clause in the commitment letter. This testimony does not foreclose a properly refreshed recollection and therefore does not "flatly contradict" Marinace's affidavit testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991); *see also Anderson*, 477 U.S. at 255 (stating that "[c]redibility determinations [and] the weighing of evidence are jury functions, not those of a judge").

[9] Plaintiff's reliance on *United California Bank* is misplaced because in that case there was no MAC clause in the commitment letter. 681 P.2d at 441.

[10] Given this ruling, the Court need not address Defendant's arguments that there are triable issues as to whether Defendant is entitled to rescind its loan commitment and whether Plaintiff could have met the conditions precedent to Defendant's obligation to fund. *See* Doc. #136 at 16-20.

Washington law. Doc. #129 at 14. As set forth above, however, Arizona law applies to Plaintiff's contract claims. Defendant acknowledges that "Arizona's application of the implied covenant of good faith and fair dealing differs sharply from Washington law[.]" *Id.* at 6 n.3. Under Arizona law, "[t]he duty of good faith extends beyond the written words of the contract." *Wells Fargo Bank*, 38 P.3d at 29 ¶ 6. A party may "breach its duty of good faith without actually breaching an express covenant in the contract." *Id.*[11]

Construed in Plaintiff's favor, the evidence shows the following: PRG had been in severe financial distress since 1999. Doc. #128 ¶¶ 2-5. Defendant knew about PRG's poor financial condition. *Id.* ¶¶ 6-8. Despite this knowledge, Defendant committed to lend Plaintiff $9.5 million for the purchase of thirteen restaurants from PRG. *Id.* ¶¶ 10-11. On October 3, 2001 – two days before the loan transaction was scheduled to close – Defendant decided to terminate its loan commitment based on a false rumor that PRG might file for bankruptcy. *Id.* ¶¶ 14-16, 18. Defendant made this decision hastily without confirming that the bankruptcy rumor was true or determining whether it was legally entitled to terminate under the terms of the commitment letter. *Id.*; Doc. #162 ¶¶ 7-14. On October 5, 2001, Defendant sent Plaintiff a letter terminating the loan commitment "because of a material adverse change in the *circumstances* of the transaction." Doc. #128 ¶ 17 (emphasis added). This reason for terminating was neither contemplated by the parties nor set forth in the MAC clauses. *Id.* Exs. A, K.

Given this evidence and the applicable principles of Arizona law, the Court concludes that a reasonable jury could return a verdict in Plaintiff's favor on the alleged breach of the duty of good faith and fair dealing. *See Wells Fargo Bank*, 38 P.3d at 30-31 (reversing the grant of summary judgment because a jury reasonably could conclude that the counterdefendant "wrongfully exercised a contractual power . . . for a reason inconsistent

---

[11] Under Washington law, "there is no 'free-floating' duty of good faith and fair dealing that is unattached to an existing contract." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 948 (Wash. 2004). Washington law "merely requires 'that the parties perform in good faith the obligations imposed by their agreement.'" *Badgett v. Security State Bank*, 807 P.2d 356, 360 (Wash. 1991).

1 with the [counterclaimant's] justified expectations"). The Court accordingly will deny
2 Defendant's motion for summary on the alleged breach of the duty of good faith and fair
3 dealing claim.

### D. Plaintiff's Motion to Strike Defendant's Brief.

Plaintiff moves to strike Defendant's cross-motion for summary judgment on the grounds that it is untimely and not permitted by the Court's scheduling order and exceeds the page limitations set forth in the local rules. Doc. #155 at 10-12; *see* Doc. #136. The Court will deny Plaintiff's motion because Defendant has obtained leave of Court to file its cross-motion, *see* Doc. #148, and Defendant's brief is not oversized because it constitutes a response to Plaintiff's motion for summary and a separate cross-motion, *see* LRCiv. 7.2(e).

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment (Doc. #127) is **denied**.

2. Defendant's motion for summary judgment (Doc. #129) and cross-motion for summary judgment (Doc. #136) are **denied**.

3. Plaintiff's motion to strike (Doc. #155) is **denied**.

The Court will set a final pretrial conference by separate order.

DATED this 31st day of March, 2006.

*/s/ Daniel G. Campbell*
_____
David G. Campbell
United States District Judge